UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MMA Consultants 1, Inc., <br><br>　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>The Republic of Peru, <br><br>　　　　　　　　Defendant. | No. 15-cv-5551 |

## DECLARATION OF JAMES H. LIDE

I, James H. Lide, hereby declare as follows:

　　　1.　　I am the Vice President of Exhibits and Interpretive Planning Services at History Associates, Inc. ("HAI").  I was retained by White & Case LLP to assist the Republic of Peru in the above-captioned action, specifically, to research the 1875 Guano Certificates at issue in this action (the "Certificates").

　　　2.　　I received my Doctor of Philosophy degree from the University of Maryland in 1998.  I received a Master of Studies degree from St. John's College, Oxford University, in 1988 and a Bachelor's Degree (*magna cum laude*) from Brown University in 1987.  I was a Fulbright Research Scholar and research fellow at the American Institute for Maghrebi Studies from 1994 to 1996.

　　　3.　　I have been with HAI since 1988.  In that time, I have developed and coordinated a wide variety of historical research projects, including projects relating to civil litigation.  I have extensive experience building and managing document collections involving materials from multiple sources, jurisdictions, and in multiple languages.

4. HAI is a leading historical research company. Founded in 1981, we have provided historical research services to a wide variety of international and domestic clients. Our staff includes professional historians, archivists, and museum professionals.

5. I supervised HAI's research of the Certificates, directed other HAI employees to conduct certain research, and was provided with reports of their research results.

6. A true and correct copy of my Curriculum Vitae is attached hereto as Exhibit A.

## I. RESEARCH QUESTIONS

7. HAI was asked to research the Certificates by specifically researching:

   a) Public archives from 1875 through 1936, and secondary sources, to determine if there was any evidence that the Certificates entered the public market in the United States and if so, when they were issued, redeemed and/or cancelled.

   b) Messrs. Hobson, Hurtado & Company ("Hobson Hurtado"), the so-called "Financial Agents in New York," under the Certificates, including to determine what their operations entailed, their connection to Peru and the guano trade, how they generally handled foreign bonds, and their involvement, if any, with the Certificates.

8. As discussed below, HAI's research of government records, newspaper archives, and publicly available secondary sources revealed no evidence to show that the Certificates were ever issued or entered the U.S. public bond market or that Hobson Hurtado ever was involved with the Certificates.

## II. FINDINGS

### A. There Is No Public Record or Archival Evidence Showing that the Certificates Entered the United States Market

9. HAI conducted extensive research of publicly available sources in the United States, including newspaper accounts, bond registries, and foreign bondholder council reports. That research located no evidence that the Certificates ever were issued in the United States, nor

is there any evidence of announcements relating to the Certificates made by Hobson Hurtado.

## Newspaper Archives

10.     According to the face of the Certificates, notice was to be published in newspapers in New York prior to redemption.  HAI's research in newspaper archives for the period 1875 to 1929 revealed no notices or other public announcements posted in any New York daily newspapers in connection with the issuance or redemption of the Certificates.

11.     Prior to 1874, there were notices posted for the redemption of *other* Peruvian debt instruments.  True and correct copies of those notices posted are attached as Exhibit B.

12.     Prior to 1875, Hobson Hurtado advertised Peruvian and Chilean Conjoint issue bonds.  True and correct copies of these advertisements are included in Exhibit C.

13.     Between 1874 and 1880, there are several instances in which Hobson Hurtado's role as guano consigner appears in advertisements. None of these advertisements or announcements made by Hobson Hurtado were made in connection with the Certificates.  True and correct copies of these advertisements are attached as Exhibit D.

14.     Research revealed that Morton Bliss & Company, another New York financial agent, advertised bond issuances in New York newspapers between 1875 and 1882.  None of these advertisements made any reference to the Certificates.  True and correct copies of these advertisements are attached as Exhibit E.

15.     Between 1906 and 1928 there were numerous articles reporting on Peruvian debt instruments, including new Peruvian bond offerings, and outstanding Peruvian bond debt.  None of these articles reference the Certificates.  True and correct copies of these articles are attached as Exhibit F.

16.     A New York Times article published on January 1, 1896 references an international arbitration tribunal, established in 1895, addressing a matter involving the Certificates.  This article does not make any reference to the Certificates having entered the United States market. A true and correct copy of this article is attached as Exhibit G.

17. The only reference to the Certificates located was in a New York Herald article discussing the Peruvian guano trade, dated June 5, 1875. That article described the Certificates only in prospective terms and revealed that, as of that date, the Certificates had *not* been issued. The article notes only that the Certificates "may possibly be offered for sale in that market." A true and correct copy of the article is attached as Exhibit H. As noted above, no subsequent references of any kind to the Certificates were located.

### Other Publicly Available Archival Sources

18. In addition to historical newspaper research, HAI reviewed reports from the Foreign Bondholders Protective Council ("FBPC"), a United States organization, and Council of the Corporation of Foreign Bondholders ("CFB"), a British organization. These organizations collected information and reported on outstanding foreign debt, including foreign government bonds. CFB reports from 1875 through 1911 and FBPC reports from 1935 and 1936 make no mention of the Certificates. The British Council's Annual Reports do, however, mention *other* Peruvian debt instruments issued in 1869, 1870, and 1872. True and correct copies of relevant excerpts of the Reports are attached as Exhibit I.

19. HAI also reviewed other US sources, including the New York State Banking Department's Annual Reports from 1885-1925, for any reference to the Certificates. Registries maintained during this period do not contain registries of foreign bonds, and we did not find any reference to the Certificates.

20. HAI also submitted inquiries to the University of California at Santa Barbara and Stanford University regarding documents in their archives relating to Hobson Hurtado or the Certificates. Neither of these collections had any documents referencing the Certificates. The University of California at Santa Barbara provided a copy of a trade publication on guano authored by Hobson Hurtado, but this publication makes no mention of the Certificates. A true and correct copy of the publication is attached as Exhibit J.

21. Finally, HAI reviewed files of the United States Department of State and United States Embassy in Peru for the period 1875 through 1880, located in the United States National

Archives.  These files contain no documents mentioning the Certificates or Hobson Hurtado.

> **B.     There Is No Evidence That Hobson Hurtado Ever Handled the Issuance or Redemption of the Certificates**

22.     HAI's research showed that Hobson Hurtado acted as a financial agent for Peru prior to 1875 with respect to *other* bonds issued by Peru. True and correct copies of Hobson Hurtado notices regarding Peruvian Bonds are attached as Exhibit C.  As noted above, there is no evidence that Hobson Hurtado ever handled the issuance or redemption of the Certificates.

23.     There are indications that Hobson Hurtado entered into bankruptcy in 1881.  True and correct copies of Trow's City Directory in 1879 and a later Congressional hearing evidencing Hobson Hurtado's bankruptcy are attached as Exhibit K.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 4, 2016

By: *[signature: Jim H. Lide]*

James H. Lide
Vice President, Exhibits and Interpretive Planning Services
History Associates, Inc.